RICHARD A. SCHONFELD, ESQ.
CHESNOFF & SCHONFELD
520 S. 4th Street
Las Vegas, Nevada 89101
Telephone: (702) 384-5563
Email: rschonfeld@cslawoffice.net
Attorney for Defendant
DAMIEN JOSEPH LEFORBES

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> DAMIEN JOSEPH LEFORBES <br><br> Defendant. | No. 2:24-CR-00515-MRA <br><br> **DEFENDANT DAMIEN JOSEPH LEFORBES' OBJECTIONS TO PRE-SENTENCE REPORT** <br><br> HON. MONICA RAMIREZ ALMADANI <br> SENTENCING DATE: 1/23/2025 |

COMES NOW, Defendant DAMIEN JOSEPH LEFORBES, by and through his undersigned counsel, RICHARD A. SCHONFELD, ESQ., of the law firm of CHESNOFF & SCHONFELD and hereby files his Objections to the Pre-Sentence Report.

///

    The following Objections to the Pre-Sentence Report are made and based upon the papers and pleadings on file herein, the accompanying Memorandum of Points and Authorities, and any argument that may be heard.

    DATED: January 2, 2025

                                CHESNOFF AND SCHONFELD

                                /s/ Richard A. Schonfeld
                                _____
                                RICHARD A. SCHONFELD
                                Attorney for Defendant
                                DAMIEN JOSEPH LEFORBES

1. Defendant respectfully objects to United States Probation's request for a four-level adjustment for role in the offense – U.S.S.G. §3B1.1(a). *See* Para. 48-52 and U.S. Probation Guideline Summary Chart.

Here, the four-level enhancement is not supported by any admissions made by Defendant, nor is the government going to seek to apply the four-level enhancement (pursuant to the Plea Agreement, the government is permitted to argue for a three-level enhancement under U.S.S.G. § 3B1.1(b)). Under the Plea Agreement, "defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, any other specific offense characteristics, adjustments, or departures under the Sentencing Guidelines are appropriate or should be imposed." Plea Agreement at p. 14, lines 7-11

Furthermore, as this Honorable Court is aware, an enhancement cannot be applied unless the government proves that enhancement by a preponderance of the evidence or the Defendant admitted in the Plea Agreement to the conduct that supports the enhancement. *See, e.g.*, *U.S. v. Harkonen*, 2013 WL 782354 (9th Cir. March 4, 2013), *see also U.S. v. Burnett*, 16 F.3d 358, 361 (9th Cir. 1994).

---

DEFENDANT'S OBJECTIONS TO PRE-SENTENCE REPORT

3

U.S.S.G. § 3B1.1 states in part:

Aggravating Role
Based on the defendant's role in the offense, increase the offense level as follows:

(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

(c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

The Commentary and Application Notes also state as follow:

1. A "participant" is a person who is criminally responsible for the commission of the offense, but need not have been convicted. A person who is not criminally responsible for the commission of the offense (e.g., an undercover law enforcement officer) is not a participant.

2. To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants. An upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization.

3. In assessing whether an organization is "otherwise extensive," all persons involved during the course of the entire offense are to be

considered. Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive.

4. In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy. This adjustment does not apply to a defendant who merely suggests committing the offense.

Background: This section provides a range of adjustments to increase the offense level based upon the size of a criminal organization (i.e., the number of participants in the offense) and the degree to which the defendant was responsible for committing the offense. This adjustment is included primarily because of concerns about relative responsibility. However, it is also likely that persons who exercise a supervisory or managerial role in the commission of an offense tend to profit more from it and present a greater danger to the public and/or are more likely to recidivate. The Commission's intent is that this adjustment should increase with both the size of the organization and the degree of the defendant's responsibility.

In relatively small criminal enterprises that are not otherwise to be considered as extensive in scope or in planning or preparation, the distinction between organization and leadership, and that of management or supervision, is of less significance than in larger enterprises that tend to have clearly delineated divisions of responsibility. This is reflected in the inclusiveness of §3B1.1(c).

*Id.*

U.S. Probation recognizes in paragraph 49 of the PSR that in comparing a defendant's role to others in the offense, "[t]he relevant comparison is to other participants in the defendant's crime, not to typical defendants who commit similar crimes." *United States v. Dominguez-Caicedo*, 40 F.4th 938, 960 (9th Cir. 2022).

Moreover, U.S. Probation recognizes that assessing the defendant's culpability vis-à-vis his co-conspirators requires three steps: "[f]irst, the court must identify all the individuals for whom there is sufficient evidence of their existence and participation in the overall scheme . . . [s]econd, the court must calculate a rough average level of culpability for these individuals, taking into account the five factors in comment 3(C) to the Mitigating Role Guideline . . . [t]hird, the court must compare the defendant's culpability to the average. Furthermore, paragraph 50 of the PSR lists additional factors the court should consider including, (i) the exercise of decision-making authority; (ii) the nature of participation in the commission of the offense; (iii) the recruitment of accomplices; (iv) the claimed right to a larger share of the fruits of the crime; (v) the degree of participation in planning or

organizing the offense; (vi) the nature and scope of the illegal activity; (vii) and the degree of control and authority exercised over others.

In a conclusory fashion, U.S. Probation summarily states in para. 51 and 52, "[b]ased on the above and after considering the factors listed in Application Note 3(C), it appears that Leforbes is considered have a 'high' culpability within the scheme. Here, the participants include Leforbes and at least five others, including the agents and sub-agents….Leforbes owned and operating his gambling business, employed the agents and sub-agents, and set up the accounts for customers on the Betting Website. As such, it appears that Leforbes was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive and a four-level increase for aggravating role adjustment is applicable."

However, it is respectfully submitted that U.S. Probation does not provide any specific evidentiary basis or analysis regarding the factors to support the purported enhancement. In light of the foregoing, there is insufficient evidence to support U.S. Probation's request for the four-level leadership enhancement.

Moreover, it must be noted that innocent individuals should not be considered as "participants." In *United States v. King*, the Ninth Circuit Court of Appeals held that the defendant's employees were not "participants" in his mail fraud schemes

---

DEFENDANT'S OBJECTIONS TO PRE-SENTENCE REPORT

7

because they were merely "innocent clerical workers." 257 F.3d 1013, 1024 (9th Cir. 2001).  *See also United States v. Egge*, 223 F.3d 1128, 1133–34 (9th Cir. 2000) ("Where the customers are solely end users of controlled substances, they do not qualify as participants . . . absent an intent to distribute or dispense the substance. In order to qualify as a participant, a customer must do more than simply purchase small quantities of a drug for his personal use."); *see also United States v. Barrie*, 267 F.3d 220, 224 (3d Cir. 2001) ("Customers of drug dealers ordinarily cannot be counted as participants in a drug distribution conspiracy."). *See also United States v. Hussein*, 664 F.3d 155, 162 (7th Cir. 2011) ("[S]imply accepting fraud proceeds, stolen goods, or other contraband does not make recipients participants in the underlying scheme that produced the ill-gotten benefits when they are simply customers and not part of the operation."); *United States v. Melendez*, 41 F.3d 797, 800 (2d Cir. 1994); *United States v. Cyphers*, 130 F.3d 1361, 1363 (9th Cir. 1997) ("[M]ere unknowing facilitators of crimes will not be considered criminally responsible participants.").

In conclusion, the four-level enhancement under U.S.S.G. §3B1.1(a) should not be applied.

---

2.      Paragraph 59 - There should be a two-level reduction under 4C1.1 as Defendant is a Zero-Point Offender. Here, but for the leadership enhancement suggested by U.S. Probation, Defendant would otherwise qualify for the reduction. As stated above, the leadership enhancement should not apply. Accordingly, Defendant should receive the Zero-Point Offender reduction.

3.      Paragraph 60 – Here, it is respectfully submitted that the total offense should be 9 i.e. 12 (base level) + 1 (18 U.S.C 1957) -2 (acceptance of responsibility) -2 (Zero-Point Offender) (Total Offense Level 9). At a minimum, in the event that the government advocates for a 3 level adjustment under 3B1.1 (which the government is permitted to advocate for and Defendant is permitted to oppose) it will be for a 3 level increase, resulting in an adjusted offense level of 13 and not 14. As stated above it is respectfully submitted that an enhancement under 3B1.1 should not be applied.

4.      Paragraph 18 – Defendant requests that this paragraph be clarified to reflect that hosts attempted to refer Defendant customers, however, there was no referral that came to fruition.

---

DEFENDANT'S OBJECTIONS TO PRE-SENTENCE REPORT

9

5.   Paragraph 107. Defendant respectfully objects to the imposition of a fine. Defendant has agreed to a significant forfeiture of property that is already in the possession of the government. It is respectfully submitted that the forfeiture should be considered as additional punishment when this Honorable Court imposes its sentence against Defendant.[1]

---

[1] It is respectfully submitted that this Honorable Court should note that a forfeiture is a punishment. *See United States v. Bajakajian*, 524 U.S. 321, 328 (1998), where the Court specifically held that criminal forfeiture is a punishment ("We have little trouble concluding that the forfeiture of currency . . . constitutes punishment."); *see also Libretti v. United States*, 516 U.S. 29, 39, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995) ("Our precedents have likewise characterized criminal forfeiture as an aspect of punishment imposed following conviction of a substantive criminal offense."); *U.S. v. Littlefield*, 821 F.2d 1365 (9th Cir. 1987); *U.S. v. Newman*, 659 F.3d 1235 (9th Cir. 2011); *U.S. v. Contorinis*, 692 F.3d 136 (2nd Cir. 2012) (citing *U.S. v. Kalish*, 626 F.3d 165, 170 (2d Cir. 2010). This precept is well-accepted across the country as well. *See, e.g*, *U.S. v. Emerson*, 128 F.3d 557, 566 (7th Cir.1997); *U.S. v. Robinson,* 721 F.Supp. 1541 (D.R.I. 1989) ("Criminal forfeiture is a form of punishment and, therefore, subject to the Eighth Amendment's prohibition against disproportionate punishments"). The Second Circuit Court of Appeals in *U.S. v. Peters*, 732 F.3d 93, 98 (2nd Cir. 2013) stated clearly, "Criminal forfeiture is a form of punishment. As such, it is distinct from restitution or other remedial actions, which are intended to return the victim and the perpetrator to the status quo that existed before the violation took place." The court in *Peters* elaborated: "Forfeiture of money . . . unlike restitution, 'constitutes punishment,' because the statute directs the court to order it 'as an additional sanction when 'imposing sentence on a person convicted' of the relevant offense' and because '[criminal] forfeiture serves no remedial purpose, is designed to punish the offender, and cannot be imposed upon innocent owners.'" *U.S. v.*

---

Moreover, Defendant has casino gambling debt in the millions of dollars.[2] Several casinos are pursuing their gambling debt with the Clark County District Attorney's office bad check unit. Accordingly, the debt is being pursued and a fine would cause significant financial hardship. Accordingly, it is respectfully submitted that the Court should not impose a fine. As will be further identified below, and in Defendant's Sentencing Memorandum that will be submitted to the Court, Defendant is respectfully seeking a sentence of probation with conditions. At most, it is respectfully requested that the Court impose a fine no larger than $10,000 in the event the Honorable Court believes a fine is warranted. *Arguendo* the guideline fine range for level 14 (and he should at most be a 13) is $7,500 to $75,000).

    6.    Defendant respectfully objects to U.S. Probation's sentencing recommendation, including that a downward variance is not warranted. Here,

---

*Peters*, 732 F.3d 93 (2nd Cir. 2013) (quoting *U.S. v. Bajakajian*, 524 U.S. 321, 328, 332, 118 S. Ct. 2028, 141 L.Ed.2d 314 (1998)).

[2] Defendant has provided additional documentation to U.S. Probation regarding Las Vegas casino table game gambling debt in the approximate amount of $6,556,175.00. This debt was incurred prior to his conditions of release in this case. It should be noted that this gambling debt is not poker related. Rather, this is casino table games gambling debt.

Defendant is seeking a sentence of probation (including with conditions of house arrest and community service).

Defendant is a first-time offender, having never in life been in contact with the criminal justice system, much less convicted of a crime. From a sentencing perspective, this is important. As was noted in *United States v. Germosen*, 473 F.Supp.2d 221, 227 (D. Mass. 2007), there is "a demonstrable difference in the recidivism rates of real first offenders as compared to other defendants in Criminal History Category I." (citing Michael Edmund O'Neill, *Abraham's Legacy: An Empirical Assessment of (Nearly) First-Time Offenders in the Federal System*, 42 V.C. L. Rev. 291 (2001)).

"Minimal or no prior involvement with the criminal justice system is a powerful predictor of a reduced likelihood of recidivism." *Id.* (citing *A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score*, 15 (Jan. 4, 2005), http//www.ussc.gov/publicat/RecidivismSalientFactorCom.pdf).

Here, it is clear that Defendant's conviction reflects an aberration in the life he has led. Even under the Sentencing Guidelines, the court is permitted to consider the traditional departure under USSG §5K2.20 for the aberrant nature of the defendant's conduct that gives rise to the conviction.

It should be noted that when the guidelines were mandatory [Pre-*Booker*], the court was permitted to issues a departure based on the aberrant behavior of the defendants pursuant to 5K2.20. "The aberrance of a criminal act is an encouraged factor for departure.'" *United States v. Garcia*, 182 F.3d 1165, 1176 (10th Cir.), cert. denied, 528 U.S. 987 (1999); *United States v. Working*, 287 F.3d 801, 805 (9th Cir. 2002). Courts have granted departures based on "aberrant behavior" in a variety of other situations. *See, e.g., United States v. Langille*, 324 F. Supp. 2d 38 (D. Me. 2004) (granting "aberrant behavior" departure where 70-year-old defendant robbed a bank); *United States v. Khan*, 2004 WL 819079 (2d Cir. 2004) (unpublished) (upholding departure granted in prosecution for conspiracy to commit bulk-cash smuggling and related offenses); *United States v. Patterson*, 281 F. Supp. 2d 626 (E.D.N.Y. 2003) (in drug conspiracy, departure for aberrant behavior warranted where defendant was motivated by desire to do a favor for a friend and cooperated with the government); *United States v. Mellert*, 2003 WL

22025007 (N.D. Cal. 2003) (unpublished) (departure granted in insider trading case; defendant had outstanding employment record, mitigated effects of conduct by depositing profits rather than spending them, and was involved in numerous prior good works).

Furthermore, Defendant will suffer additional collateral consequences from this felony conviction. These are factors that the Court is permitted to consider in fashioning the sentence. *See, e.g., United States v. Anderson*, 533 F.3d 623 (8th Cir. 2008) (affirming a downward variance based on "other ways in which the defendant had suffered atypical punishment such as the loss of his reputation and his company, the ongoing case against him from the Securities and Exchange Commission and the harm visited upon him as a result of the fact that his actions brought his wife and friend into the criminal justice system"); *United States v. Gaind,* 829 F. Supp. 669, 671 (S.D.N.Y. 1993) (granting downward departure where defendant was punished by the loss of his business).

In addition, Defendant is not a danger to the public and the instant offense is non-violent. Defendant is 43 years old and has no criminal history. Defendant has also remained compliant while on pretrial release.

Accordingly, a downward variance with probation is appropriate under the circumstances. *See, e.g., Simon v. United States*, 361 F. Supp. 2d 35, 48 (E.D.N.Y. 2005) (basing variance in part on defendant's age of 50 upon release because recidivism drops substantially with age); *United States v. Hamilton*, 323 Fed. Appx. 27, 31 (2d Cir. 2009) ("the district court abused its discretion in not taking into account policy considerations with regard to age recidivism not included in the Guidelines"); *United States v. Holt*, 486 F.3d 997, 1004 (7th Cir. 2007) (affirming below-guideline sentence based on defendant's age, which made it unlikely that he would again be involved in a violent crime).

It should be further stated that courts have noted that "probation is not leniency." *See, e.g., United States v. Bragg*, 582 F.3d 965 (9th Cir. 2009) (citing Gall, 552 U.S. at 44, 48-49,128 S. Ct. at 593, 596).

In *United States v. Murray*, the Honorable Chief Justice Taft stated:

> The great desideratum was the giving to young and new violators of law a chance to reform and to escape the contaminating influence of association with hardened or veteran criminals in the beginning of imprisonment. Experience has shown that there was a real locus poenitentiae between the convictions and certainly of punishment, on the one hand, and the actual imprisonment and public disgrace of incarceration and evil association, on the other. If the case was a proper one, great good could be done in stopping punishment by putting the new

> criminal on probation. The avoidance of imprisonment at time of sentence was therefore the period to which the advocates of a Probation Act always directed their urgency. Probation was not sought to shorten the term. Probation is the attempted saving of a man who has taken one wrong step and whom the judge thinks to be a brand who can be plucked from the burning at the time of the imposition of the sentence.

275 U.S. 347, 357 (1928).

In its seminal decision in *Roberts v. United States*, 320 U.S. 264 (1943), the United States Supreme Court held that it was the intent of the legislature to offer an unhardened offender an opportunity to rehabilitate himself without institutional confinement under the tutelage of an officer and under the continuing power of the Court to impose institutional punishment for his original offense in the event that he abused the opportunity given to him by the Court.

It is respectfully submitted that the well-chosen language of the United States Supreme Court applies directly in the instant situation. As was pointed out by Chief Justice Hughes in *Burns v. United States*, 287 U.S. 216 (1932):

> The [probationer] is still a person convicted of an offense, and the suspension of his sentence remains within the control of the Court. The continuance of that control, apparent from the terms of the statute, is essential to the accomplishment of its beneficent purpose, as otherwise probation might be more reluctantly granted, or, when granted, might be made the occasion of delays and obstruction which would bring reproach upon the administration of justice.

---

DEFENDANT'S OBJECTIONS TO PRE-SENTENCE REPORT

16

*Id.* at 222.  The Honorable Judge Gleeson from Eastern District of New York also recognized:

> [I]t bears emphasis that when a judge chooses between a prison term and probation, she is not choosing between punishment and no punishment. Probation is less severe than a prison term, but both are punishment.

*United States v. Leitch*, 2013 WL 753445 (E.D.N.Y. Feb. 28, 2013)

Defendant respectfully submits that he will earnestly cooperate with a program of supervision and continue to meet his family responsibilities and children.  It should be noted that research indicates that incarceration of a parent can have negative consequences on a child.  *See, e.g.,* Murray, J., & Farrington, D. P. The effects of parental imprisonment on children (2008). In M. Tonry (Ed.), Crime and justice: A review of research (Vol. 37, pp. 133-206). Chicago, IL: University of Chicago Press.  Murray and Farrington's research indicates that children of incarcerated parents experience increased risk for antisocial outcomes, internalizing symptoms, and academic difficulties.  Murray and Farrington conclude, "An obvious option for preventing harmful effects of parental imprisonment is to imprison fewer parents. This could be achieved by increasing

---

the use of alternative forms of punishment, such as probation, intensive supervision, house arrest, electronic monitoring, community service, and day fines."

It must also be noted that even when the guidelines were mandatory, courts were empowered to grant a departure under U.S.S.G. §5H1.6. As such, courts are also allowed to take into accounts family arrangements when issuing its sentence. *See U.S. v. Handy*, 752 F. supp. 561 (E.D.N.Y. 1990) (exceptionally promising future of the older two children would be threatened by the prolonged incarceration of their mother); *U.S. v. Thi*, 692 F.3d 571 (7th 2012) (court noted sentence would have adverse impact on young daughter and recommended that sentence be served in a half-way house).

In light of the foregoing (and as will be further addressed in Defendant's sentencing memorandum), a downward variance with a sentence of probation is warranted.

7. Defendant respectfully objects to the gambling prohibition condition. *See* sentencing recommendation at p. 4, para. 14. U.S. Probation notes that Defendant has been a professional poker player since 2003, and professional gambling/poker has been his sole source of income since 2013. Accordingly, Defendant should be permitted to gamble in licensed gaming establishments. It

should be noted that while on pretrial supervision Defendant has been permitted to continue his profession as a poker player without any negative issues arising therefrom. To the contrary, Defendant has been able to support his family as a result of his profession.

       8.     Paragraphs 90-91 - Defendant graduated from Los Angeles City College in Spring 2001 where he played baseball. He then went on to UNLV to play baseball in Fall of 2001.

DATED: January 2, 2025

                                    CHESNOFF AND SCHONFELD

                                    /s/ Richard A. Schonfeld

                                  _____
                                  RICHARD A. SCHONFELD
                                  Attorney for Defendant

# CERTIFICATE OF SERVICE

I hereby certify that I am over the age of eighteen and am not a party to this action. The undersigned hereby certifies that service of the foregoing was served on the 2nd day of January 2025, via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

/s/ Rosemary Reyes
Rosemary Reyes
Employee of Chesnoff & Schonfeld

---

DEFENDANT'S OBJECTIONS TO PRE-SENTENCE REPORT