RICHARD A. SCHONFELD, ESQ.
CHESNOFF & SCHONFELD
520 S. 4th Street
Las Vegas, Nevada 89101
Telephone: (702) 384-5563
Email: rschonfeld@cslawoffice.net
Attorney for Defendant
DAMIEN JOSEPH LEFORBES

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DAMIEN JOSEPH LEFORBES<br><br>Defendant. | No. 2:24-CR-00515-MRA<br><br>**DEFENDANT DAMIEN JOSEPH LEFORBES' SENTENCING MEMORANDUM AND REQUEST FOR A DOWNWARD VARIANCE WITH PROBATION**<br><br>**SENTENCING DATE: 4/16/26**<br>**SENTENCING TIME: 11 A.M.**<br><br>**HON. MONICA RAMIREZ ALMADANI** |

COMES NOW, Defendant DAMIEN JOSEPH LEFORBES, by and through his undersigned counsel, RICHARD A. SCHONFELD, ESQ., of the law firm of CHESNOFF & SCHONFELD and hereby files his Sentencing Memorandum and Request for Downward Variance with Probation.

_____

DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR A DOWNWARD VARIANCE WITH PROBATION

i

The following Sentencing Memorandum and Request for a Downward Variance with Probation is made and based upon the papers and pleadings on file herein, the accompanying Memorandum of Points and Authorities, cited exhibits, Objections to the Pre-Sentence Report, and any argument that may be heard.

DATED: April 3rd, 2026

CHESNOFF AND SCHONFELD

/s/ Richard A. Schonfeld

_____
RICHARD A. SCHONFELD
Attorney for Defendant
DAMIEN JOSEPH LEFORBES

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................ 1

II.    PROCEDURAL HISTORY ....................................................... 2

III.    APPLICATION OF THE SENTENCING FACTORS
       UNDER 18 U.S.C. § 3553(a) SUPPORTS A NON-CUSTODIAL
       SENTENCE ........................................................................4

   1. The History and Characteristics of the Defendant ......................... 4

      i. Mr. LeForbes' Background ........................................... 4

      ii. Letters of Support ....................................................... 7

   2. The Need for the Sentence Imposed ............................................... 10

      (A)  To Reflect the Seriousness of the Offense, Promote
           Respect for the Law, and Provide Just Punishment ...............10

      (B) To Afford Adequate Deterrence ............................................... 10

      (C) To Protect the Public from Further Crimes ........................... 17

      (D) To Provide Needed Training or Treatment ........................... 18

   3. The Kinds of Sentences Available ................................................. 18

   4. Guidelines, Policy, and Other Criteria of the
      Sentencing Commission .............................................................. 22

   5. The Need to Avoid Unwarranted Sentencing Disparities ............. 22

_____

The need to provide restitution to any victims of the offense…………. 25

IV. CONCLUSION ................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Burns v. United States*,
287 U.S. 216 (1932) ............................................................................................14

*Gall v. United States*
552 U.S. 38 (2007)..............................................................................................13

*Libretti v. United States*,
516 U.S. 29 (1995)..............................................................................................18

*Roberts v. United States*,
320 U.S. 264 (1943) ...........................................................................................14

*United States v. Bajakajian*,
524 U.S. 321 (1998)……………………………………………………………18, 19

*United States v. Bragg*,
582 F.3d 965 (9th Cir. 2009) .............................................................................13

*United States v. Cole*,
622 F. Supp. 2d 632 (N.D. Ohio 2008) .............................................................17

*United States v. Cole*,
765 F.3d 884 (8th Cir. 2014) .............................................................................19

*United States v. Contorinis,*
692 F.3d 136 (2d Cir. 2012) ..............................................................................18

*United States v. Cooper*,
394 F.3d 172 (3d Cir. 2005) ..............................................................................21

*United States v. Edwards*,

595 F.3d 1004 (9th Cir. 2010) ....................................................................20

*United States v. Emerson,*
128 F.3d 557 (7th Cir. 1997) .....................................................................19

*United States v. Garcia,*
182 F.3d 1165 (10th Cir. 1999) .................................................................12

*United States v. Germosen,*
473 F. Supp. 2d 221 (D. Mass. 2007)........................................................11

*United States v. Hamilton,*
323 Fed. Appx. 27 (2d Cir. 2009)..............................................................13

*United States v. Handy,*
752 F. Supp. 561 (E.D.N.Y. 1990) ............................................................15

*United States v. Holt,*
486 F.3d 997 (7th Cir. 2007) .....................................................................13

*United States v. Kalish,*
626 F.3d 165 (2d Cir. 2010) ......................................................................18

*United States v. Khan,*
2004 WL 819079 (2d Cir. 2004) ...............................................................12

*United States v. Langille,*
324 F. Supp. 2d 38 (D. Me. 2004)..............................................................12

*United States v. Littlefield,*
821 F.2d 1365 (9th Cir. 1987) ...................................................................18

*United States v. Mellert*,
2003 WL 22025007 (N.D. Cal. 2003)................................................................12

*United States v. Murray*,
275 U.S. 347 (1928)............................................................................................13

*United States v. Nesbeth*,
188 F. Supp. 3d 179 (E.D.N.Y. 2015)................................................................16

*United States v. Newman,*
659 F.3d 1235 (9th Cir. 2011) ...........................................................................18

*United States v. Patterson*,
281 F. Supp. 2d 626 (E.D.N.Y. 2003)................................................................12

*United States v. Peters*,
732 F.3d 93 (2d Cir. 2013) .................................................................................19

*United States v. Robinson*,
721 F. Supp. 1541 (D.R.I. 1989) ........................................................................19

*United States v. Stern*,
590 F. Supp. 2d 945 (N.D. Ohio 2008) ..............................................................16

*United States v. Thi*,
692 F.3d 571 (7th Cir. 2012) ..............................................................................16

*United States v. Whitehead*,
532 F.3d 991 (9th Cir. 2008) ..............................................................................20

*United States v. Working*,
287 F.3d 801 (9th Cir. 2002) ..............................................................................12

DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR A DOWNWARD VARIANCE WITH PROBATION

vii

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Mr. Damien LeForbes appears before this Court having accepted responsibility early, complied fully with pretrial supervision, and demonstrated that he is not the type of offender for whom incarceration is necessary to achieve the purposes of sentencing under 18 U.S.C. § 3553(a).

It is respectfully submitted that the advisory guideline range of 15 to 21 months overstates both the seriousness of the offense and Mr. LeForbes' personal culpability when viewed in proper context.

This case involves a non-violent gambling operation—one with no identifiable victims, and conduct that, while unlawful, is fundamentally economic in nature. Mr. LeForbes has no criminal history, has accepted responsibility, and has already endured significant punishment in ways the Guidelines do not adequately capture.  In addition, Mr. LeForbes is forfeiting what amounts to more than $1,000,000.  *See infra.*

For these reasons, the defense respectfully requests a downward variance to a non-custodial sentence, or in the alternative, a sentence of time served with conditions.

_____

DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR A DOWNWARD VARIANCE WITH PROBATION

1

## II.  PROCEDURAL HISTORY

On September 16, 2024, Mr. LeForbes was summoned to appear in this matter and was released the same day on a $50,000 unsecured bond with conditions of pretrial supervision.

On October 17, 2024, Mr. LeForbes entered a guilty plea to a two-count Information charging: (1) Operating an Illegal Gambling Business, in violation of 18 U.S.C. § 1955; and (2) Transactional Money Laundering, in violation of 18 U.S.C. § 1957.

Pursuant to the written plea agreement, the parties agreed to the applicable base offense levels and certain guideline provisions, while preserving their respective rights to argue for a sentence outside the advisory guideline range under 18 U.S.C. § 3553(a). The Government further agreed to recommend a sentence at the low end of the applicable guideline range, provided certain conditions are met.

The United States Probation Office prepared a Presentence Investigation Report ("PSR"), which was initially disclosed on December 20, 2024, and later revised on June 20, 2025 and November 26, 2025.

---

Mr. LeForbes submitted objections to the PSR, including supplemental objections filed on July 3, 2025. The Probation Office considered those objections but ultimately maintained its guideline calculations and recommendations.  Mr. LeForbes' Objections to the PSR are incorporated by reference as though fully set forth herein.

The PSR calculates a total offense level of 14 and a Criminal History Category of I, resulting in an advisory guideline range of 15 to 21 months' imprisonment.

It should be noted that Mr. LeForbes, among other objections, has objected to United States Probation's four level leadership role enhancement (which he is permitted to do under the Plea Agreement).  If that enhancement is not applied, Mr. LeForbes' adjusted offense level would be 13, and with 2 levels off for acceptance, and 2 levels off for the Zero-Point Offender reduction, his total offense level would be 9 (i.e. 13-2-2=9).  This would result in a sentencing range of 4 to 10 months (Zone B where Mr. LeForbes would be eligible for probation with a condition of home confinement).

In addition, it should also be noted that if the role enhancement is only applied as 3 levels, his adjusted offense level with 3 points off for acceptance of

_____

DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR A DOWNWARD VARIANCE WITH
PROBATION

3

responsibility would result in a total offense level of 13 (16-3=13) with a range of 12-18 months (and with the government recommending the low end).

Since his release, Mr. LeForbes has remained compliant with all conditions of pretrial supervision.  As set forth in his previously filed objections and supplemental objections to the Presentence Investigation Report, Mr. LeForbes expressly requested that the Probation Office consider a downward variance, including a non-custodial sentence such as probation, based on the factors set forth in 18 U.S.C. § 3553(a). While those arguments were presented to Probation, the Probation Office maintained its guideline calculation and did not adopt the requested variance.

### III. APPLICATION OF THE SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a) SUPPORTS A NON-CUSTODIAL SENTENCE

**1. The history and characteristics of the defendant**

    **i. Mr. LeForbes' background**

Mr. LeForbes is a 44-year-old lifelong United States citizen, born in Gardena, California, who has lived a stable and productive life prior to this offense.

He holds an associate degree and has supported himself and his family through legitimate means for years. Unlike many defendants who come before this

Court, Mr. LeForbes does not have a history of criminal conduct. He falls within Criminal History Category I, reflecting that this case represents an aberration rather than a pattern.

Mr. LeForbes is a father of two children who reside with him. He has been actively involved in their upbringing and daily lives. The events surrounding this case have had a profound impact not only on him, but on his children as well.

As detailed in the PSR, law enforcement executed a search warrant at his home in a manner that was deeply traumatic for his family. Armed officers entered the residence and, in the course of securing the scene, pointed firearms at his children. This experience has had lasting emotional consequences, particularly for his minor children.

Beyond the immediate trauma, the public nature of the arrest caused additional harm. Mr. LeForbes and his family were subjected to community stigma after images and commentary circulated online, leading to social isolation for his children. These consequences, borne not only by Mr. LeForbes but by innocent family members, are significant and ongoing.

Mr. LeForbes has maintained a stable residence in Rossmoor, California, where he lives with his family. He has complied with all pretrial conditions since

his release in September 2024, including financial monitoring and supervision requirements, demonstrating that he is capable of abiding by court-ordered restrictions.

There is no indication that Mr. LeForbes has engaged in violent conduct, substance abuse, or behavior that would suggest he poses a danger to the community. His history reflects stability, family responsibility, and the ability to function productively within society.

Mr. LeForbes has accepted responsibility for his conduct and expressed genuine remorse. He acknowledged the factual basis of the offense during his interview with Probation and has not attempted to minimize his actions.

Importantly, he has also demonstrated insight into the consequences of his conduct, not only legal consequences, but the impact on his family and reputation. The experience of this case has been, by all indications, a turning point.

_____

DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR A DOWNWARD VARIANCE WITH PROBATION

6

**ii.    Letters of Support**

Friend for over 12 years, Matthew Winnick, writes in part:

[H]e has consistently demonstrated qualities of integrity, dedication, and compassion. It is my hope that this letter will provide some insight into his character and the deep remorse he feels for his actions….

Over the years, I have witnessed firsthand the care and effort Damien puts into ensuring his family's well-being. He is a man who prioritizes his children's education, growth, and happiness, and he is actively involved in their lives—whether it's helping Jaxson navigate the complexities of adolescence or cheering Calvin on in his athletics.

One moment that stands out to me, and which I believe captures Damien's character, occurred a few years ago when my own family was going through a difficult time. My daughter Sophia was hospitalized for an extended period, and without hesitation, Damien stepped in to support us. He arranged meals, took care of errands, and even made time to visit us at the hospital, often bringing along small gifts to brighten my Sophia's day. He did all of this while juggling his own responsibilities as a father and husband. This selfless behavior is just one example of the kind of person Damien is—someone who genuinely cares for others and acts without expecting anything in return.

Damien's current situation is deeply troubling to him, not only because of the legal consequences but also because he feels he has let down the people who matter most to him. In our conversations since this ordeal began, Damien has expressed profound regret and taken full responsibility for his actions. He acknowledges the mistakes he has made and the impact they have had on his family, friends, and community. Importantly, he has used this experience as an opportunity for self-reflection and growth. He has sought counseling to address the underlying issues that led to his involvement in gambling and is

_____

DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR A DOWNWARD VARIANCE WITH PROBATION

7

committed to making amends and ensuring that he never finds himself in such a situation again.

I have always believed that a person's true character is revealed not in their successes but in how they respond to adversity. In Damien's case, his response has been one of accountability and a genuine desire to make things right. He has been open about his struggles, candidly sharing his journey with his family and close friends in the hope of rebuilding trust and setting an example for his children. He wants Jaxson and Calvin to understand the importance of honesty and responsibility, even when it's difficult.

While I do not condone Damien's actions, I firmly believe that they are not indicative of the man he truly is. This is his first offense, and it is clear to me that he has learned a valuable and painful lesson. Damien is not someone who shirks responsibility or seeks to blame others; rather, he is a person who strives to do better when given the chance. I am confident that, if shown leniency, Damien will use this experience as a turning point to contribute positively to his community and to continue being the supportive, caring person I have known him to be….

He is a good man who made a poor decision, and he is determined to make amends and move forward in a positive direction. His family depends on him, not just financially but emotionally and spiritually, and I believe that allowing him the opportunity to remain present in their lives will have a profound impact on their future….

I trust in your wisdom and fairness and am hopeful that Damien's remorse and commitment to change will be evident to the court. Should you require any additional information or wish to speak with me further, please do not hesitate to reach out.

*See* Exhibit 1.

_____

DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR A DOWNWARD VARIANCE WITH PROBATION

8

Oscar Guerrero, who has known Mr. LeForbes for over 17 years, writes in part:

…I immediately saw someone with passion, honesty, integrity, a mentor, truthful, and someone who cared. Throughout the years I've had the privilege to see him be a great Husband, Father, Son, Brother, and a Friend.

There was a time when I was in sales and our store was looking to promote from within and give someone an opportunity to be a Finance Manager. They talked to me and I told them I wasn't ready, still had a lot to learn. Damien came to me right away and told me I was taking the position. I laughed, he was serious but I'll never forget because he stuck his neck out for a kid with no experience and he wasn't going to let me fail. He took me under his wing and taught me more than I ever thought someone would. In the 20 years I've been in the car business, Damien is one biggest reason why I've had a successful career. I have always been appreciative and forever grateful for him. When I first heard about Damien's troubles I was shocked, at a loss for words. I am aware of the charges he is facing and this doesn't define who Damien's character is. What I can tell you is that Damien is the type of person that will take responsibility for his actions, good or bad. He is extremely regretful and I have no doubt he has accepted his wrongdoings. He is extremely remorseful for the pain he has caused not only for himself but for all his loved ones. I respectfully ask that the court considers all these positives in Damien's case as I truly believe in him, as he once did in me, and give him an opportunity to have a positive impact in our community.

*See* Exhibit 2.

_____

DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR A DOWNWARD VARIANCE WITH PROBATION

9

Mr. LeForbes's uncle, Kerry McIntyre, writes in part:

… I have seen him grow into a responsible, hardworking, and compassionate individual who values his family and community. Damien has always been someone who takes his commitments seriously, whether in his professional life, personal relationships, or responsibilities to those around him. He is known for his integrity, dependability, and willingness to help others in need. While he is currently facing a legal matter, I firmly believe that this does not define who he is as a person. He is remorseful and understands the importance of learning from this experience and making better choices moving forward.

I respectfully ask that you consider Damien's true character and his potential to grow from this situation. Given the opportunity, I have no doubt that he will continue to be a positive and productive member of society.

*See* Exhibit 3.

**2.      The need for the sentence imposed**

> **(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;**

> **(B)     to afford adequate deterrence to criminal conduct**

Mr. LeForbes is a first-time offender, having never been in contact with the

criminal justice system, much less convicted of a crime.[1]  This fact is critical to his

---

[1] If the Court does not apply the aggravated role enhancement, then Mr. LeForbes would qualify for the two-level Zero Point Offender reduction under §4C1.1.

sentencing inquiry.  As was noted in *United States v. Germosen*, 473 F.Supp.2d 221, 227 (D. Mass. 2007), there is "a demonstrable difference in the recidivism rates of real first offenders as compared to other defendants in Criminal History Category I." (citing Michael Edmund O'Neill, *Abraham's Legacy: An Empirical Assessment of (Nearly) First-Time Offenders in the Federal System*, 42 V.C. L. Rev. 291 (2001)).

"Minimal or no prior involvement with the criminal justice system is [also] a powerful predictor of a reduced likelihood of recidivism."  *Germosen*, 473 F.Supp.2d at 227 (citing *A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score*, 15 (Jan. 4, 2005).[2]

Here, Mr. LeForbes's conviction clearly reflects an aberration in the law-abiding life that he previously led.  Even under the Sentencing Guidelines, the court is permitted to consider the traditional departure under USSG §5K2.20 for the aberrant nature of the defendant's conduct that gives rise to the conviction. When the guidelines were mandatory [that is, before *Booker* in 2005], a court was

---

[2] http// www.ussc.gov/publicat/RecidivismSalientFactorCom.pdf.

DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR A DOWNWARD VARIANCE WITH PROBATION

11

permitted to depart based on aberrant behavior pursuant to §5K2.20. "The aberrance of a criminal act is an encouraged factor for departure.'" *United States v. Garcia*, 182 F.3d 1165, 1176 (10th Cir.), *cert. denied*, 528 U.S. 987 (1999); *United States v. Working*, 287 F.3d 801, 805 (9th Cir. 2002).

Courts grant departures based on "aberrant behavior" in a variety of other situations—none of which are as evident or dire as Mr. LeForbes's. *See, e.g., United States v. Langille*, 324 F. Supp. 2d 38 (D. Me. 2004) (granting "aberrant behavior" departure where 70-year-old defendant robbed a bank); *United States v. Khan*, 2004 WL 819079 (2d Cir. 2004) (unpublished) (upholding departure granted in prosecution for conspiracy to commit bulk-cash smuggling and related offenses); *United States v. Patterson*, 281 F. Supp. 2d 626 (E.D.N.Y. 2003) (in drug conspiracy, departure for aberrant behavior warranted where defendant was motivated by desire to do a favor for a friend and cooperated with the government); *United States v. Mellert*, 2003 WL 22025007 (N.D. Cal. 2003) (unpublished) (departure granted in insider trading case; defendant had outstanding employment record, mitigated effects of conduct by depositing profits rather than spending them, and was involved in numerous prior good works).

_____

Accordingly, a downward variance is appropriate under the present circumstances. *See, e.g., Simon v. United States*, 361 F. Supp. 2d 35, 48 (E.D.N.Y. 2005) (basing variance in part on defendant's age of 50 upon release because recidivism drops substantially with age); *United States v. Hamilton*, 323 Fed. Appx. 27, 31 (2d Cir. 2009) ("the district court abused its discretion in not taking into account policy considerations with regard to age recidivism not included in the Guidelines"); *United States v. Holt*, 486 F.3d 997, 1004 (7th Cir. 2007) (affirming below-guideline sentence based on defendant's age, which made it unlikely that he would again be involved in a violent crime).

We further note that "probation is not leniency." *See, e.g., United States v. Bragg*, 582 F.3d 965 (9th Cir. 2009) (citing *Gall*, 552 U.S. at 44, 48-49, 128 S. Ct. at 593, 596). Thus, in *United States v. Murray*, Chief Justice Taft stated:

> The great desideratum was the giving to young and new violators of law a chance to reform and to escape the contaminating influence of association with hardened or veteran criminals in the beginning of imprisonment. Experience has shown that there was a real locus poenitentiae between the convictions and certainly of punishment, on the one hand, and the actual imprisonment and public disgrace of incarceration and evil association, on the other. If the case were a proper one, great good could be done in stopping punishment by putting the new criminal on probation. The avoidance of imprisonment at time of sentence was therefore the period to which the advocates of a

_____

DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR A DOWNWARD VARIANCE WITH PROBATION

13

> Probation Act always directed their urgency. Probation was not sought to shorten the term. Probation is the attempted saving of a man who has taken one wrong step and whom the judge thinks to be a brand who can be plucked from the burning at the time of the imposition of the sentence.

275 U.S. 347, 357 (1928).

Similarly, in *Roberts v. United States*, 320 U.S. 264 (1943), the Court held that it was the intent of the legislature to offer an unhardened offender an opportunity to rehabilitate himself without institutional confinement under the tutelage of an officer and under the continuing power of the Court to impose institutional punishment for his original offense in the event that he abused the opportunity given to him by the Court.

It is respectfully submitted that the well-chosen language of the United States Supreme Court applies directly in the instant situation. As stated by Chief Justice Hughes in *Burns v. United States*, 287 U.S. 216 (1932):

> The [probationer] is still a person convicted of an offense, and the suspension of his sentence remains within the control of the Court. The continuance of that control, apparent from the terms of the statute, is essential to the accomplishment of its beneficent purpose, as otherwise probation might be more reluctantly granted, or, when granted, might be made the occasion of delays and obstruction which would bring reproach upon the administration of justice.

*Id.* at 222.

_____

DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR A DOWNWARD VARIANCE WITH PROBATION

14

Mr. LeForbes respectfully submits that he will earnestly cooperate with a program of supervision and continue to meet his family responsibilities.

It should be noted that research indicates that incarceration of a parent can have negative consequences on a child. *See, e.g.,* Murray, J., & Farrington, D. P. The effects of parental imprisonment on children (2008). In M. Tonry (Ed.), Crime and justice: A review of research (Vol. 37, pp. 133-206). Chicago, IL: University of Chicago Press. Murray and Farrington's research indicates that children of incarcerated parents experience increased risk for antisocial outcomes, internalizing symptoms, and academic difficulties. Murray and Farrington conclude, "An obvious option for preventing harmful effects of parental imprisonment is to imprison fewer parents. This could be achieved by increasing the use of alternative forms of punishment, such as probation, intensive supervision, house arrest, electronic monitoring, community service, and day fines."

Mr. LeForbes further submits that even when the guidelines were mandatory, courts were still empowered to grant a departure under U.S.S.G. §5H1.6. As such, courts are also allowed to take into accounts family arrangements when issuing its sentence. *See United States v. Handy*, 752 F. supp. 561 (E.D.N.Y. 1990) (exceptionally promising future of the older two children would be threatened by

DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR A DOWNWARD VARIANCE WITH PROBATION

15

the prolonged incarceration of their mother); *United States v. Thi*, 692 F.3d 571 (7th Cir. 2012) (sentence will have adverse impact on young daughter and recommended that sentence be served in a half-way house).

This Honorable Court should take into consideration Mr. LeForbes's family obligations and grant a downward variance.

Additional factors under Section 3553(a) support a sentence that does not involve a term of custody. For example, promoting "respect for the law" is a two-way street under § 3553(a). *See, e.g., United States v. Stern*, 590 F.Supp.2d 945, 956 (N.D. Ohio 2008) ("Respect for the law is promoted by punishments that are fair . . . not those that simply punish for punishment's sake") (emphasis omitted).

Furthermore, as a result of this case, Mr. LeForbes has caused himself shame and sustained a felony conviction. As Senior Judge Block noted in the United States District Court for the Eastern District of New York, there are "nearly 50,000 federal and state statutes and regulations that impose penalties, disabilities, and disadvantages on convicted felons." *See U.S. v. Nesbeth*, 188 F.Supp.3d 179, 184 (E.D. N.Y. 2015).

Mr. LeForbes has learned a very grave lesson and proffers to this Honorable Court that he will not find himself on this side of the law again.

_____

DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR A DOWNWARD VARIANCE WITH PROBATION

16

**(C)    to protect the public from further crimes of the defendant;**

Mr. LeForbes is not a danger to the public. These are non-violent offenses and besides the charges in this case, Mr. LeForbes has no prior criminal history. Mr. LeForbes is a middle-aged man who has never been involved in any other criminal activity—or, cited for any form of drug or alcohol abuse—in his entire life. *See, e.g.*, *United States v. Cole*, 622 F. Supp. 2d 632, 638 (N.D. Ohio 2008) ("In this case, there is little need for incapacitation. Cole has no appreciable prior record of criminal conduct. He did not engage in any violent offense and it is highly unlikely that he will be in a position to use insider information in the future. The Court therefore finds that incapacitation [under Section 3553(a)(2)(C)] is not a significant concern in this case."); *see also*  Pub. L. No. 98-473, § 239, 98 Stat. 1987, 2039 (1984) (note to 18 U.S.C. § 3551) (directing that "sentencing decisions should be designed to ensure that prison resources are, first and foremost, reserved for those violent and serious criminal offenders who pose the most dangerous threat to society," and that "alternative sentences" should be considered for less serious offenders).

Accordingly, subsection (c) further supports the imposition of a non-custodial sentence.

---

DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR A DOWNWARD VARIANCE WITH PROBATION

17

> **(D)** **to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner**

Mr. LeForbes has an educational and vocational training history. Accordingly, this factor does not weigh in favor of incarceration.

## 3. The kinds of sentences available

Here, a non-custodial sentence is reasonable. In addition, Mr. LeForbes has agreed to forfeit assets, already in the Government's possession, with a current value in excess of $1,000,000. *See* Plea Agreement at p. 3, lines 24-27.[3]

---

[3] It is respectfully submitted that that this Honorable Court should note that a forfeiture is a punishment. *See United States v. Bajakajian*, 524 U.S. 321, 328 (1998), where the Court specifically held that criminal forfeiture is a punishment ("We have little trouble concluding that the forfeiture of currency . . . constitutes punishment."); *see also Libretti v. United States*, 516 U.S. 29, 39, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995) ("Our precedents have likewise characterized criminal forfeiture as an aspect of punishment imposed following conviction of a substantive criminal offense."); *U.S. v. Littlefield*, 821 F.2d 1365 (9th Cir. 1987); *U.S. v. Newman*, 659 F.3d 1235 (9th Cir. 2011); *U.S. v. Contorinis*, 692 F.3d 136 (2nd Cir. 2012) (citing *U.S. v. Kalish*, 626 F.3d 165, 170 (2d Cir. 2010). This precept is well-accepted across the country as well. *See, e.g*, *U.S. v. Emerson*, 128 F.3d 557, 566 (7th Cir.1997); *U.S. v. Robinson,* 721 F.Supp. 1541 (D.R.I. 1989) ("Criminal forfeiture is a form of punishment and, therefore, subject to the Eighth Amendment's prohibition against disproportionate punishments"). The Second Circuit Court of Appeals in *U.S. v. Peters*, 732 F.3d 93, 98 (2nd Cir. 2013) stated clearly, "Criminal forfeiture is a form of punishment. As such, it is distinct from restitution or other remedial actions, which are intended to return the victim and the perpetrator to the status quo that existed before the violation took place." The

---

In addition, the following are examples of cases where defendants engaged in fraudulent conduct and received sentences other than incarceration:

\*      *U.S. v. Cole*, 765 F.3d 884 (8th Cir. 2014) (affirming three years' probation where guideline range called for 135-168 months of imprisonment).  In *Cole*, the Eighth Circuit in affirming the sentence of three years' probation where guideline range called for 135-168 months of imprisonment stated: "The court focused on Cole's history and characteristics, emphasizing that she had no prior contact with law enforcement and was 'markedly different' than 'most of the fraudsters who appear before th[e] Court' in that Cole 'is not a consummate fraudster . . . .'"  *Id.* at 886.

\*      *U.S. v. Roth*, No. 05 CR 792-5, 2008 WL 686783, \*3-4, 7 (N.D. Ill. Mar. 11, 2008).  The Court departed from guidelines range of 63 to 78 months to probation

court in *Peters* elaborated: "Forfeiture of money . . . unlike restitution, 'constitutes punishment,' because the statute directs the court to order it 'as an additional sanction when 'imposing sentence on a person convicted' of the relevant offense' and because '[criminal] forfeiture serves no remedial purpose, is designed to punish the offender, and cannot be imposed upon innocent owners.'" *U.S. v. Peters*, 732 F.3d 93 (2nd Cir. 2013) (quoting *U.S. v. Bajakajian*, 524 U.S. 321, 328, 332, 118 S. Ct. 2028, 141 L.Ed.2d 314 (1998)).

_____

on charge of making false statements to the FBI due, in part, to defendant's sincere remorse and absence of criminal history, all indicating no threat of recidivism);

*      *U.S. v. Wood*, 5:05-CR-00044, (D. N.C. 2010) (imposing sentence of four years' probation (with six months home confinement) in relation to securities fraud case involving $15,000,000 after a jury verdict);

*      *U.S. v. Edwards*, 595 F.3d 1004 (9th Cir. 2010) (affirming probation for bankruptcy fraud where guideline range was 27-33 months);

*      *U.S. v. Whitehead*, 532 F. 3d 991 (9th Cir. 2008) (affirming sentence of 1,000 hours of community service, restitution, and five years' supervised release where guideline range was 41-51 months and defendant was convicted of selling over $1,000,000 in counterfeit access cards);

*      *U.S. v. Rubinstein*, Southern District of Florida, Case No. 09-CR-60166. Hid approximately $7 million in undisclosed accounts he used to purchase real estate and South African currency. Sentenced to 3 years' probation, 12 months' home detention, and a fine of $40,000;

*      *U.S. v. Homann*, District of New Jersey, Case No. 09-CR-724. Control account of $5 million and made a conscious decision not to seek out and enter into

_____

DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR A DOWNWARD VARIANCE WITH PROBATION

20

the IRS' voluntary disclosure program. Sentenced to 5 years' probation, 300 hours community service, and a fine of $60,000.

\*      *U.S. v. Robbins*, Southern District of New York, Case No. 10-CR-333. Created a sham corporation to be listed as the nominal holder of his UBS accounts containing nearly $42 million. Sentenced to 12 months' probation, and a fine of $2,000.

\*      *U.S. v. Silva*, Eastern District of Virginia, Case No. 10-CR-00044. Repatriated funds from his undisclosed offshore account by mailing himself 26 packages of currency and carrying another two packages into the U.S., always structured in amounts under $10,000. Sentenced to 2 years' probation, 4 months' home detention, 100 hours community service, and a fine of $20,000.

\*      *U.S. v. Cooper*, 394 F.3d 172 (3rd Cir. 2005) (holding a four-level downward departure was warranted because of the defendant's good works that were of a personal nature). The departure resulted in three years' probation for a defendant who pleaded guilty to one count of securities fraud and one count of subscribing to a false tax return, and had a Guidelines range of fifteen to twenty-one months.

_____

DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR A DOWNWARD VARIANCE WITH PROBATION

21

**4.      Guidelines, Policy, and Other Criteria of Sentencing Commission**

The fourth and fifth factors in § 3553(a)(4)-(5) require the Court to consider the Guidelines and Policy Statements applicable to the case. As set forth above, a non-custodial sentence is reasonable.

**5.      The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct**

The need to avoid unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) is not abstract in this case, it is illustrated by the government's own recent sentencing position in *United States v. Mathew Bowyer*, Case No. 8:24-cr-00080-JWH (C.D. Cal.).

In *Bowyer*, the government described conduct that was materially more serious, broader in scope, and more harmful than the conduct at issue here. Yet, the government represented that Bowyer's cooperation "contributed to a pre-indictment plea with LeForbes." (Gov't Sentencing Position, Dkt. 53 at 9). According to the government's sentencing memorandum, Bowyer operated a "years-long" illegal gambling enterprise that handled "hundreds of millions of dollars in bets" and involved "hundreds of bettors." (Gov't Sentencing Position, Dkt. 53 at 1–2). The government further emphasized that Bowyer used multiple financial accounts, both

_____

in his own name and in the names of others, to receive and move illicit proceeds, and that his operation generated millions of dollars in income. *See id.*

Critically, Bowyer's conduct extended well beyond illegal gambling. The government highlighted that Bowyer committed a separate tax offense by underreporting more than $4 million in income in a single year, resulting in approximately $1.6 million in tax loss to the IRS. (*id.* at 2–3). The government characterized these crimes as serious, multi-faceted, and harmful, not only financially, but socially, arguing that Bowyer's operation exploited compulsive gamblers and contributed to broader societal harm. (*id.* at 10–11).

In short, the government's own presentation in Bowyer reflects a defendant who: (1) operated at a significantly larger scale; (2) handled vastly greater sums of money; (3) engaged in additional criminal conduct in the form of tax fraud; and (4) caused identifiable financial harm to the federal government.

Despite those materially aggravating factors, the government agreed that Bowyer's properly calculated guideline range of 41 to 51 months should be reduced to 15 to 21 months based on cooperation, and it ultimately recommended a sentence at the low end of that range. (*id.* at 1). Bowyer in fact received a sentence of

---

DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR A DOWNWARD VARIANCE WITH PROBATION

23

approximately one year and one day, effectively at or below the bottom of that reduced range.

The comparison to Mr. LeForbes is instructive. Unlike *Bowyer*, Mr. LeForbes was not charged with tax fraud, did not cause any loss to the IRS, and did not operate a business on the scale described in *Bowyer*. Nor does the record reflect the same degree of financial magnitude or layered criminal conduct.

Yet, under the advisory Guidelines, Mr. LeForbes faces a range of 15 to 21 months, the same range the government argued was appropriate for a far more culpable defendant in *Bowyer*. Imposing a custodial sentence within that range here would therefore result in equivalent, or even greater, punishment for materially less serious conduct. That is precisely the type of unwarranted disparity § 3553(a)(6) is intended to prevent.

If anything, *Bowyer* establishes a meaningful benchmark for proportionality in this District. Where a defendant engaged in broader criminal conduct, caused substantial tax losses, and operated a significantly larger enterprise, yet received a sentence of approximately one year and one day, it follows that a defendant with less serious conduct and no tax-related harm warrants a lower sentence.

_____

DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR A DOWNWARD VARIANCE WITH PROBATION

24

Accordingly, consideration of the government's own position in *Bowyer* strongly supports a downward variance in this case to avoid unwarranted sentencing disparity and to ensure that the sentence imposed is "sufficient, but not greater than necessary" under § 3553(a).

**6.      The need to provide restitution to any victims of the offense**

Restitution is not applicable in this case

**IV.   CONCLUSION**

For all of the foregoing reasons, a custodial sentence within the advisory guideline range would be greater than necessary to achieve the purposes of sentencing under 18 U.S.C. § 3553(a).

DATED: April 3rd, 2026

CHESNOFF AND SCHONFELD

/s/ Richard A. Schonfeld

_____
RICHARD A. SCHONFELD
Attorney for Defendant
DAMIEN LEFORBES

_____

DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR A DOWNWARD VARIANCE WITH PROBATION
25

# **CERTIFICATE OF SERVICE**

I hereby certify that I am over the age of eighteen and am not a party to this action. The undersigned hereby certifies that service of the foregoing was served on the 3rd day of April 2026, via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

/s/ Rosemary Reyes
Rosemary Reyes
Employee of Chesnoff & Schonfeld

_____

DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR A DOWNWARD VARIANCE WITH PROBATION

26