RICHARD A. SCHONFELD, ESQ. (CA Bar No. 202182)
CHESNOFF & SCHONFELD
520 S. 4th Street
Las Vegas, Nevada 89101
Telephone: (702) 384-5563
Email: rschonfeld@cslawoffice.net
Attorney for Defendant
DAMIEN JOSEPH LEFORBES

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>DAMIEN JOSEPH LEFORBES<br>Defendant. | No. 2:24-CR-00515-MRA<br>**DEFENDANT DAMIEN JOSEPH LEFORBES' SUPPLEMENTAL BRIEF REGARDING SENTENCING**<br>Sentencing: December 10, 2026<br>Time: 10:00 a.m.<br>**HON. MONICA RAMIREZ ALMADANI** |

## I. INTRODUCTION

Defendant Damien LeForbes submits this supplemental brief addressing the matters identified in the Court's October 15, 2026 minute order (Dkt. 71): the aggravating role adjustment, Mr. LeForbes's pretrial release violation, a fine, and the terms of probation or, alternatively, supervised release.

## II. THE COURT SHOULD NOT IMPOSE THE FOUR-LEVEL ROLE ADJUSTMENT

Mr. LeForbes previously objected to Probation's proposed four-level adjustment for role in the offense under U.S.S.G. § 3B1.1(a), and the government has joined that objection. Dkt. 70 at 1:22–2:6. An enhancement cannot be applied unless the government proves its factual basis by a preponderance of the evidence or the defendant admitted the supporting conduct in the plea agreement. *See, e.g.*, *United States v. Harkonen*, 2013 WL 782354 (9th Cir. Mar. 4, 2013) (unpublished); *see also United States v. Burnett*, 16 F.3d 358, 361 (9th Cir. 1994).

Attachment A admits that more than five people conducted or financed the business, that at least five kept it operating for at least five years, and that gross revenue often exceeded $2,000 in a day. Dkt. 3, Attach. A ¶ 3. Those facts satisfy the statutory elements, not an aggravating role enhancement. For example, they do not identify a single participant whom Mr. LeForbes led.

In *United States v. Vlanich*, 75 F. App'x 104, 109–10 (3d Cir. 2003) (unpublished), the court rejected a four-level increase predicated on the same facts required for the gambling offense. In *Vlanich*, the court stated in part:

> We agree with appellant that the 4–level increase called for by subsection (a) should not have been applied in this case, because the statute of conviction, 18 U.S.C. § 1955, itself requires proof of the factors specified in the guideline, so that imposing the upward adjustment amounts to double counting. The statute of conviction applies to

> "whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business ..." and defines an illegal business as meaning a gambling business which, inter alia, "(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business ..." The base offense level for a violation of § 1955 is 12, and is, by its terms, applicable to persons in a leadership role of a gambling enterprise involving five or more persons. We are confident that the Commission did not intend a 4–level upward adjustment from the stated base offense level predicated upon the very same factors which are essential elements of the crime itself. Further support for this conclusion is found in the introductory commentary to part B, which states "when an offense is committed by more than one participant, § 3B1.1 or § 3B1.2 (or neither) may apply".

*Id.* at 109-110. The defense does not contend that a § 1955 conviction categorically precludes an aggravating-role adjustment. Rather, the facts establishing a qualifying gambling enterprise cannot substitute for the separate showing § 3B1.1 requires. The Ninth Circuit has rejected a reading of § 3B1.1 that would make a role enhancement "all but automatic for *all* conspirators in such cases." *United States v. Holden*, 908 F.3d 395, 403 (9th Cir. 2018) (emphasis in original).

The four-level adjustment requires more than an important role in a multi-person criminal enterprise; the record must establish an organizing or leadership role concerning other participants, not merely greater culpability. *United States v. Avila*, 95 F.3d 887, 889–91 (9th Cir. 1996). The Court must distinguish leadership or organization from mere management or supervision by considering decision-making authority, recruitment, participation in planning, financial interest, and

authority over others. *United States v. Ingham*, 486 F.3d 1068, 1074–75 (9th Cir. 2007). Even essential participation does not establish the requisite role. *United States v. Tat*, 97 F.4th 1155, 1162–63 (9th Cir. 2024). The enterprise's size and Mr. LeForbes's operation of the business therefore cannot substitute for specific conduct showing that he organized or led another criminally responsible participant. *See* U.S.S.G. § 3B1.1(a) & cmt. nn.1–2, 4.

In *United States v. Luca*, 183 F.3d 1018, 1024 (9th Cir. 1999), the Ninth Circuit held that § 3B1.1(a) cannot apply unless the court "identifies a participant over whom the defendant exercised managerial or organizational control," and vacated the adjustment notwithstanding the sentencing court's reliance on the extensive scheme and the plea's factual basis. Likewise, a PSR's characterization of a defendant as an organizer or leader cannot substitute for facts establishing that role. *United States v. Whitney*, 673 F.3d 965, 975–76 (9th Cir. 2012).

The distinction between participants and customers is particularly important here. As the Supreme Court has noted, § 1955 reaches participation in an illegal gambling business "except participation as a mere bettor." *Sanabria v. United States*, 437 U.S. 54, 70 n.26 (1978). Placing bets or paying one's own gambling losses does not, without more, establish participation in operating the business, and instructions concerning settlement of a customer's personal wagers should not be equated with organizing or leading a criminally responsible participant. A bettor

who also knowingly acts as an agent may be a participant, and Mr. LeForbes does not withdraw his admissions concerning agents, compensation, or recruitment; he disputes only their sufficiency to establish the proposed four-level role. Dkt. 3, Attach. A ¶¶ 5, 8.

## III. THE PRETRIAL RELEASE VIOLATION

The parties addressed pretrial supervision in their October 9, 2026 filing, and counsel provided additional detail at the October 15, 2026 hearing.

Mr. LeForbes traveled to Dallas, Texas, where he retrieved $300,000 in cash that he planned to take to Las Vegas to play casino poker. His conditions of release did not prohibit playing poker, and he had permission to travel to Las Vegas. He did not, however, obtain permission for, or disclose, his trip to Texas to his Pretrial Services Officer.

According to the Report of Investigation, when the investigating officer asked whether he had packed the bag and what it contained, Mr. LeForbes said it held $300,000 in cash that he was taking to Las Vegas, and he then consented to a search of the bag. He explained that the World Series of Poker, then underway in Las Vegas, was the purpose of his trip.

The World Series of Poker is the largest and most prestigious poker event in the world. It runs for more than six weeks and offers professional players

concentrated poker activity not available in other locations or at other times of the year. Until that point, Mr. LeForbes was a professional poker player, and the event was a significant opportunity to earn income in his profession.

The Court also asked how common it is for non-players to provide funds for a poker player's participation. That arrangement, known as "staking," is common. Four decades ago, the Nevada Supreme Court distinguished an agreement to finance participation in lawful poker tournaments in exchange for a share of the winnings from a gaming debt between opposing players, and held it to be a lawful and enforceable business arrangement. *Sigel v. McEvoy*, 101 Nev. 623, 707 P.2d 1145, 1146–47 (1985).

Staking has since become even more common; established platforms such as GGPoker, StakeKings, and Pokerbase allow backers to buy a percentage of a player's tournament action and receive a share of any winnings.

Consistent with that practice, Mr. LeForbes told the investigating officer that the funds belonged to the people who "sponsor" him.

Mr. LeForbes nevertheless recognizes that traveling to Dallas without disclosing it to his Pretrial Services Officer, retrieving a large amount of cash, and planning to travel to Las Vegas to play poker not only violated his conditions of pretrial release but also was not conduct befitting someone on pretrial supervision. It was also the point at which Mr. LeForbes recognized that his professional poker

playing was in fact a gambling addiction. He has since shifted part of the focus of his individual counseling to gambling addiction treatment, begun regularly attending Gamblers Anonymous, and obtained lawful alternative employment. These are measures both parties considered in jointly recommending probation with home confinement and abstention from all gambling. Dkt. 70 at 2:18–3:4.

Mr. LeForbes's therapist, Seema Bakshi, L.M.F.T., has documented 54 psychotherapy sessions since September 30, 2024, addressing gambling addiction, anxiety, and depression. She describes him as open and cooperative and plans to continue weekly or biweekly sessions as clinically indicated. *See* Ex. 1, Bakshi Progress Letter (Oct. 19, 2026), at 1.

Mr. LeForbes now works for a construction company. *See* Ex. 2, paycheck stub. If the Court adopts the joint recommendation of probation with home confinement, approved absences for work, therapy, and Gamblers Anonymous would allow home confinement to restrict his liberty without interrupting the work and treatment that support his compliance.

## IV. THE DEFENSE REQUESTS A $2,000 FINE

Dkt. 70 does not recommend a fine. The defense requests a $2,000 fine. At offense level 9, the fine table provides a range of $2,000 to $20,000. U.S.S.G. § 5E1.2(c)(3) (2025). Because these offenses ended in 2023, the 2026 Manual

expressly retains the November 1, 2025 table. U.S.S.G. § 5E1.2(h)(2) (2026); Dkt. 3, Attach. A ¶ 2, at 26.

Although Probation assessed an immediate ability to pay $90,000, it did not identify that figure as the amount the Court must impose. Dkt. 44 ¶¶ 105–109. Its financial analysis relied on reported gambling earnings of $23,468 per month, *id.* ¶¶ 92, 95, which do not reflect his current construction wages; Mr. LeForbes no longer gambles. He recognizes the Court's authority to impose a greater fine under 18 U.S.C. § 1957(b)(2) and U.S.S.G. § 5E1.2(c)(4), but requests $2,000 based on proportionality and his current financial circumstances.

## V. THE COURT MAY IMPOSE PROBATION EVEN IN ZONE D

Even at offense level 15, Criminal History Category I (18–24 months, Zone D), § 5C1.1(f) is advisory, not a statutory bar. Neither § 1955 nor § 1957 mandates imprisonment or prohibits probation. As Class D and Class C felonies, respectively, these offenses permit probation for one to five years if no sentence of imprisonment is imposed. 18 U.S.C. § 3561(a), (c)(1). *Gall v. United States*, 552 U.S. 38, 41, 47–50, 59–60 (2007), upheld probation despite a 30–37-month range. *See also United States v. Edwards*, 595 F.3d 1004, 1008, 1018 (9th Cir. 2010) (probation with home detention despite a 27–33-month range).

After calculating the range, the Court may explain why a variance under § 3553(a) is sufficient here: home confinement imposes immediate punishment; abstinence, meetings, and counseling address the risk revealed on pretrial release; and construction work provides income outside gambling. The government also joined the defense in noting that Mathew Bowyer, who received one year and one day, ran a larger operation and committed a separate tax offense. Dkt. 70 at 3:26–4:28; *see United States v. Bowyer*, No. 8:24-cr-00080-JWH, Dkt. 53 (C.D. Cal.).

## VI. TERMS OF PROBATION OR, ALTERNATIVELY, SUPERVISED RELEASE

The parties jointly recommend probation with standard conditions and the following special conditions: (1) home confinement for the first four months; (2) continued treatment with Seema Bakshi at Daybreak Counseling Center; (3) continued Gamblers Anonymous attendance at least once a week for the first 52 weeks; (4) abstention from all gambling throughout probation; and (5) 50 hours of community service during the first year. Dkt. 70 at 2:18–3:4, 4:25–28. The previously agreed search condition also applies. Dkt. 3 ¶ 2(h), at 2–3. The defense proposes three years of probation. If the Court instead imposes a custodial term, Mr. LeForbes requests that the same special conditions be imposed as conditions of supervised release (without home confinement).

Mr. LeForbes respectfully asks the Court to sustain the joint objections, find a total offense level of 9, and adopt the parties' probation recommendation. If the Court finds a Zone D range, he requests the same disposition as a variance. He also requests a fine of $2,000.

DATED: November 5th, 2026

CHESNOFF & SCHONFELD

/s/ Richard A. Schonfeld
RICHARD A. SCHONFELD
Attorney for Defendant
DAMIEN JOSEPH LEFORBES

# **CERTIFICATE OF SERVICE**

I certify that I am over eighteen years of age and am not a party to this action. On November 5th, 2026, I served the foregoing supplemental brief through the Court's CM/ECF system on all parties registered for electronic service.

/s/ Rosemary Reyes
Rosemary Reyes
Employee of Chesnoff & Schonfeld

# EXHIBIT 1

October 19, 2026 letter from

Seema Bakshi, L.M.F.T.

~Daybreak Counseling Center~

Psychotherapy, Counseling,

& Mental Health Services

RE: Damien LeForbes

October 19, 2026

To Whom It May Concern:

I am writing this letter to inform you that Damien LeForbes has attended 54 psychotherapy sessions thus far, beginning on September 30, 2024. During sessions we focus on treating and managing symptoms of anxiety, depression, and gambling addiction. He is open and cooperative during sessions. We plan to continue therapy on a weekly or bi weekly basis, as clinically indicated.

Sincerely,

**Seema Bakshi, L.M.F.T.**
Licensed Marriage and Family Therapist
Daybreak Counseling Center
www.daybreakcounselingcenter.com
4182 Viking Way Suite #202
Long Beach CA. 90802
(209) 690-5081

# EXHIBIT 2

October 23, 2026 paycheck stub

| Company Code | Loc/Dept | Number | Page |
|---|---|---|---|
| ZG / LC7 28309303 | 01/ | 8541558 | 1 of 1 |

ONE STOP CONSTRUCTION INVESTMENTS I
12340 Seal Beach Blvd Ste 654
Seal Beach, CA 90740

# Earnings Statement

Period Starting: 10/16/2026
Period Ending: 10/22/2026
Pay Date: 10/23/2026

Taxable Filing Status: Married
Exemptions/Allowances:
Federal: Std W/H Table
State: 2
Local: 0
Social Security Number [redacted]

Tax Override:
Federal: 0.00 Addnl
State:
Local:

Damien LeForbes
[redacted]

| Earnings | rate | hours/units | this period | year to date |
|---|---|---|---|---|
| Regular | | 40.00 | 2403.85 | 2403.85 |
| **Gross Pay** | | | **$2,403.85** | $2,403.85 |

| Statutory Deductions | this period | year to date |
|---|---|---|
| Federal Income | -120.00 | 120.00 |
| Social Security | -149.04 | 149.04 |
| Medicare | -34.86 | 34.86 |
| California State Income | -75.71 | 75.71 |
| California State DI | -31.25 | 31.25 |
| **Net Pay** | **$1,992.99** | |

| Other Benefits and Information | this period | year to date |
|---|---|---|
| Sick | | |
| - Carry Over | | 0.00 |
| - Accrued Hours | 1.35 | 1.35 |
| - Taken Hours | 0.00 | 0.00 |
| - Balance | | 1.35 |
| Total Hours Worked | 40.00 | 40.00 |

**Deposits**

| account number | transit/ABA | amount |
|---|---|---|
| [redacted] | | 1992.99 |

**Important Notes**

Basis of pay: Salaried

Your federal taxable wages this period are $2,403.85
The accrued hours on your Sick Plan may not be available until your 90th day of employment

ONE STOP CONSTRUCTION INVESTMENTS I
12340 Seal Beach Blvd Ste 654
Seal Beach, CA 90740

**Pay Date:** 10/23/2026

| Deposited to the account | account number | transit/ABA | amount |
|---|---|---|---|
| Checking DirectDeposit | [redacted] | | 1992.99 |

THIS IS NOT A CHECK